**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**

| | |
|---|---|
| **LAURIE CLARK, individually, and on behalf of all others similarly situated,** | |
| **Plaintiff,** | **Case No. _____** |
| **v.** | |
| **ENVISION HEALTHCARE CORP.,** | **JURY DEMAND** |
| **Defendant.** | |

## CLASS AND COLLECTIVE ACTION COMPLAINT

Plaintiff Laurie Clark ("Plaintiff"), individually, and on behalf of all others similarly situated, brings this Class and Collective Action Complaint against Defendant Envision Healthcare Corp. ("Envision") and hereby states and alleges as follows:

## INTRODUCTION

1.     The American healthcare system is in crisis.  A litany of pre-existing problems and inequities have recently been amplified by COVID-19—now the deadliest pandemic in United States history—and have strained the healthcare industry to a breaking point.  These dynamics have created intolerable working conditions for those whose play a frontline role in safeguarding this nation's health: doctors, advanced practitioners and nurses.  The brutally long working hours, chronic understaffing and illegal pay practices endured by these critical workers has led to widespread discontent and burnout.  Both a cause and accelerant of this malaise is the growing corporatization of healthcare—where profits are prioritized both over patient care as well as over the fair treatment of those who provide it.

2.     This case sits at the confluence of all these factors.  And the failure of Envision Healthcare—a $15 billion per year medical management corporation owned by a $459 billion

hedge fund—to pay its healthcare workers their earned wages in violation of both contract and labor law is one predictable consequence of a broken healthcare system.

3.      Consistent with its for-profit model, Envision treats its nurses, advanced practitioners and doctors as commodities that it sells by the scheduled hour to its hospital customers, first taking a cut of the profits before paying its workers their hourly wages.  Further, to ensure that it achieves consistent and maximum profitability, Envision only pays its workers for the hours that it has *scheduled* them to work.  But the reality of the dynamic and unpredictable healthcare environment is that a doctor, advanced practitioner or nurse's work is rarely done at the end of a scheduled shift.  Indeed, to ensure continuous and safe care for their patients, healthcare workers must routinely work past the end of their scheduled shifts to complete their responsibilities, including to update medical records and assist their overworked colleagues. Envision knows this, but games the hourly pay scheme by refusing to compensate its workers for time worked beyond their *scheduled* shift.

4.      This rigged system—by which Envision offloads the variability of extra-shift hours onto its workers—is a plain violation of Envision's employment contracts, the Fair Labor Standards Act and state statutes governing overtime and wage payments.  This lawsuit seeks to recover those unpaid wages on behalf of Envision healthcare workers nationwide.

## BACKGROUND

5.      Plaintiff and all other similarly situated employees work or worked for Envision, a healthcare management and staffing company.  Envision uses form employment contracts that identify Envision and scores of its hospital-specific subsidiaries as employers of Plaintiff and similarly situated workers.  Plaintiff and similarly situated employees are jointly employed by Envision and these subsidiaries.  The non-party subsidiaries are technically owned by licensed

2

physicians, but are controlled and managed entirely by Envision, and their profits flow entirely to Envision. Non-party Missouri IPS Medical Services, LLC, which jointly employs Plaintiff with Envision, is one such subsidiary.

6. Pursuant to its company-wide policies and procedures, Envision failed to pay Plaintiff and other similarly situated employees for all hours worked, including failing to pay overtime when employees worked more than 40 hours in a single workweek. These practices violated Envision's contracts with employees, the Fair Labor Standards Act, and state wage and hour laws. This lawsuit seeks to recover these unpaid wages and overtime that Envision owes its employees.

7. Specifically, Envision only pays Plaintiff and class members, at most, for their scheduled shifts without regard to the amount of time they actually worked for Envision's benefit. Plaintiff and other similarly situated employees regularly worked time in excess of their pre-scheduled shifts and time over 40 hours in a given week for which they were not paid. Plaintiff, for instance, routinely spent time treating patients and writing, updating, and maintaining her patients' medical records – work critical to ensuring patients continued to receive proper care – after her shift had concluded. Frequently, this would result in her working more hours than her scheduled shift and more than 40 hours in a particular week. Envision did not compensate Plaintiff for this important and necessary work despite being aware that it was being performed for Envision's benefit without compensation, and despite Envision's promise to pay her an hourly rate for all hours that she worked. Envision treated other similarly situated workers alike in this regard.

8. Envision's systemic violations of federal and state wage laws were willful, in bad faith and were motivated by a desire to cut labor costs at the expense of their legal obligations to their employees.

9.     Plaintiff, individually and on behalf of all others similarly situated, brings this lawsuit as: (a) a collective action under the Fair Labor Standards Act, ("FLSA"), 29 U.S.C. § 201, *et seq*., to recover unpaid overtime wages owed to Plaintiff and all other similarly situated workers employed by Envision; and (b) Rule 23 class actions for breach of contract and other common law claims, as well as for violations of state wage payment laws.

## JURISDICTION AND VENUE

10.     The FLSA authorizes court actions by private parties to recover damages for violation of the FLSA's wage and hour provisions.  Federal question jurisdiction over the FLSA claims of Plaintiff and all others similarly situated is based on 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

11.     Jurisdiction over the breach of contract and state law wage and hour claims of Plaintiff and all others similarly situated is based on 28 U.S.C. § 1367, in that the state law claims are so related to the FLSA claims that they form part of the same case or controversy.  The Court likewise possesses subject matter jurisdiction over this case pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2).  Plaintiff (a resident of Missouri) seeks class action certification in which at least one member of the class is a citizen of a state different from Envision (a Delaware corporation with its principal place of business in Tennessee), the amount in controversy exceeds $5 million exclusive of interest and costs, and the proposed class contains more than 100 members.

12.     This Court has personal jurisdiction over Envision with respect to all claims brought by Plaintiff and all others similarly situated because the company's principal place of business is in Nashville, Tennessee. As a result, Envision is subject to general jurisdiction in this forum.

13.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims set forth herein occurred in this judicial district.

**PARTIES**

14.     Plaintiff Laurie Clark is a citizen and resident of Missouri.  Plaintiff's Consent to Join pursuant to 29 U.S.C. § 216(b) is attached hereto as Exhibit A.

15.     Defendant Envision is a Delaware corporation having its principal place of business in Tennessee.  Envision is a medical practice management company that employs doctors, nurses, and other healthcare professionals nationwide.  On or about June 2018, Envision was acquired by private equity firm KKR & Co., Inc. for approximately $9.9 billion.

16.      At all relevant times, Envision is or has been an enterprise engaged in commerce or in the production of goods or services for commerce within the meaning of 29 U.S.C. § 203(s)(1), and, upon information and belief, has had an annual gross volume of sales made or business done of not less than $500,000.

**FACTUAL ALLEGATIONS**

*a.*      ***Envision's Internal Employee Structure***

17.     Envision is a conglomerate composed of three core lines of business, which correspond to three predecessor entities: (1) Emcare, which specializes in emergency medicine and emergency room staffing; (2) Sheridan, which specializes in anesthesiology services; and (3) AmSurg, which specializes in outpatient surgery practice.

18.     Across all of its various lines of business, Envision subjects its employees to the same hierarchy of control and the same policies and practices with respect to pay and timekeeping.

19.     Envision employs tens of thousands of employees at hospitals and other healthcare facilities in more than forty states. Internally, it divides its medical personnel into two broad categories: (1) Clinicians or Clinical Employees; and (2) Lower-Level or Non-Clinical Employees.

20.     The Clinician/Clinical Employee category consists of both physicians as well as Advanced Practice Practitioners (APPs). Envision deems most of its nurses, including Nurse Practitioners, Physicians' Assistants, Certified Nurse Anesthetists, and the like to be APPs.

21.      Envision's Lower-Level/Non-Clinical Employee category consists of Registered Nurses, Licensed Practical Nurses, Medical Assistants, CIMs, Ultrasound Techs, and Healthy Hearing Techs.

### b.     Plaintiff's Employment

22.     Plaintiff Clark is a nurse practitioner who specializes in hospitalist medicine. From September 2020 to the present, she has been employed by Envision, working at Research Medical Center in Kansas City, Missouri. In the past, she has also worked shifts for Envision at Centerpoint Medical Center in Independence, Missouri.

23.     At all times during her employment with Envision, Plaintiff has been an hourly non-exempt employee.

24.     On or about September 22, 2020, Plaintiff executed a contract to begin working for Envision on a part-time basis and paid at an hourly rate. In December 2020, she executed a new contract converting her to a full-time employee, but still paid at an hourly rate.

25.     Envision is a party to the contract executed by Plaintiff, and to those executed by similarly situated employees. Plaintiff's employment contract expressly incorporates as a party "the entities identified on the attached Schedules", of which Envision was one such entity. Further,

Plaintiff's employment contract was proffered to her in a letter sent by an Envision corporate manager on Envision corporate letterhead.

26.    Under both contracts, Envision promised to pay Plaintiff a set hourly rate "for *all hours worked.*" Under her initial September 2020 contract, Envision promised to pay her "$62.50 per hour for *all hours worked* during a Day Shift" and "$67.50 per hour for *all hours worked* during a Night Shift."

27.    Similarly, her later December 2020 contract promised to pay her "$62.50 per hour for *all hours worked* during a Day Shift" and "$67.50 per hour for *all hours worked* during a Night Shift" with respect to hours worked at Centerpoint Medical Center. The contract also promises premium pay of "62.50 per hour for *all hours worked* in excess of 84 hours per month."  Plaintiff and other similarly situated employees were not salaried and were paid per hour.

28.    Plaintiff has worked in excess of 84 hours per month for nearly every month the contract has been in effect.

29.    Nonetheless, Envision has not paid Plaintiff her designated hourly rate for "all hours worked." Instead, it has paid her only for the hours she has been *scheduled* to work.

30.    But, due in part to patient care requirements and staffing constraints—which Envision requires her and other similarly situated workers to complete and of which Envision is fully aware—Plaintiff is regularly required to continue working after her scheduled shift is complete.

31.    At times, this work has consisted of finishing up the treatment of her patients, assisting a colleague with one of his or her patients, or other miscellaneous administrative tasks. Often, however, this additional time is spent charting.

32. Charting is important and necessary work in any medical setting. Maintaining accurate and updated records is critical to ensuring that patients receive the medical care they need. Proper charting allows all other treating personnel to know what treatment has been performed, what tests have been done, and whether any diagnoses have been rendered, thereby helping to ensure continuity of care for a given patient.

33. Proper charting is also necessary to Envision's business purposes, as medical records are used to determine the rates at which they are paid by third-party payors such as Medicare, Medicaid, and private health insurance companies.

34. In fact, Envision's employment contracts with Plaintiff and other similarly situated employees explicitly require its employees to perform timely and accurate patient charting. Its Employee Handbook further details that charting must be completed for the day <u>before the employee leaves his or her work facility.</u>

35. Nonetheless, Plaintiff and other similarly situated workers have not been compensated at their hourly rates for the work they have performed after their scheduled shift were complete.

36. Indeed, Envision has not even used a time-clock or other method to track the amount of time Plaintiff has actually worked. Instead, the company pays her only for the time listed on her pre-arranged schedule. And in violation of the FLSA's recordkeeping regulations, Envision fails to keep records reflecting the number of hours Plaintiff and similarly situated employees work in a given workweek. *See* 29 C.F.R. § 516.2 (requiring employers to track records regarding "hours worked each workday and total hours worked each workweek" for employees like Plaintiff and similarly situated workers at Envision).

c. **Envision's Uniform, Nationwide, and Company-Wide Corporate Policies Concerning Payment of Overtime and Time Worked Outside Its Workers' Pre-Arranged Schedules**

1. **Official, *De Jure* Policies**

37. Envision's Employee Handbook states that non-exempt hourly employees are only permitted to work scheduled hours, and that any time worked outside scheduled hours had to be approved by a supervisor.

38. However, Plaintiff and other similarly situated employees were routinely compelled by their patient care obligations, including particularly the requirement that they complete their charting, to continue working for substantial periods of time after their scheduled shifts were over, work which was for Envision's benefit and of which Envision was aware.

39. Indeed, Envision's Employee Handbook specifically prohibits an employee from leaving his or her work facility before his or her charting has been completed.

40. The Handbook also requires non-exempt hourly employees to clock in at the beginning of each shift and clock out at the end of each shift. Further, such employees are prohibited from clocking in more than five minutes before the start of their shift, or from clocking out more than five minutes after.

41. However, (with extremely limited exceptions) Envision employees are not provided with a timekeeping system at all. Specifically, the company uses four electronic systems to track time for payroll purposes, only one of which can be used by any given employee. Those systems are EmTime, Q-genda, PRT, and Kronos. Of those, EmTime and Q-genda do not even allow an employee to record when a given employee begins and ends their workday without supervisory approval, and instead only list their pre-scheduled hours for a given day.

9

42. With regard to the payment of overtime for hours in excess of 40 in a given week, Envision's Employee Handbook states that such overtime must be approved by a person's immediate supervisor *in advance*.

43. The Handbook also requires that all overtime hours must be recorded and signed by a supervisor, notwithstanding the fact that most employees did not have access to a system with the capability of accurately tracking the amount of time worked.

44. Envision's Employee Handbook also attempts to foist upon its employees the responsibility for checking their own time records to ensure their accuracy, notwithstanding the fact that many did not have access to a program capable of keeping accurate time records, and notwithstanding the fact that the obligation to create and maintain accurate time records is a nondelegable duty borne by *employers* under the FLSA.

45. Envision also maintains a separate Clinical Employee Handbook, applicable only to Clinicians/Clinical Employees, which is to say, both physicians and APPs. The separate Clinical Employee Handbook does not have a policy for overtime, nor does it mandate specific requirements for employee timekeeping. It does, however, like the general Employee Handbook, attempt to hold individual employees responsible for ensuring the accuracy of their recorded time worked.

46. Upon information and belief, the policies stated in the Employee Handbook are generally applicable to all Envision employees, including Clinicians/Clinical Employees, and the Clinical Employee Handbook amends and supplements those generally applicable policies as to Clinicians/Clinical Employees (i.e., physicians and APPs).

47. Envision's written handbook policies erroneously contemplate all Clinicians/Clinical Employees as being exempt from the FLSA's overtime requirements. While it

is true that all physicians actively engaged in the practice of medicine are exempt, APPs who are paid on an hourly basis are not.

### 2. *De Facto* Policies

48.    As a practical matter, Plaintiff and other similarly situated workers are paid "to the schedule" by Envision. Envision schedules its employees' hours and work shifts by disseminating to them a schedule for the upcoming week or weeks. It then pays them their hourly rate for the number of hours scheduled, not the number of hours actually worked.

49.    As a consequence, Plaintiff and other similarly situated workers are not paid for all work they performed for Envision and are not paid time-and-a-half for all time in excess of 40 hours in a given week, in violation of their employment contracts, the FLSA, and state wage and hour laws.

50.    Pursuant to Envision's uniform corporate policy, time spent working on*, inter alia*, charting, caring for existing patients, helping out a co-worker, and performing miscellaneous administrative tasks after a person's scheduled shift was complete was strictly not compensable, and categorically would not be paid by Envision, even if the time was accurately tracked by the employee and reimbursement was specifically requested.

51.    The only exception to this policy of non-payment was for time spent treating new patients that first arrived for treatment at or near the end of the employee's shift. Even then, the time would be compensated only if the employee sent a letter to his or her director requesting approval for payment and setting out the precise reason additional time was worked, the number of patients treated during that time, those patients' complaints and diagnoses, and the amount of time requested for compensation. Even if the director approved the request, it would still need to be sent up to the regional medical director for his or her approval as well. Only upon the regional

medical director's approval would additional time worked by Plaintiff and other similarly situated persons be paid by Envision.

52.     Pursuant to this uniform corporate policy, any request for payment for post-shift work not related to treatment of new patients, including for charting and assisting co-workers, was to be categorically rejected.

53.     Upon information and belief, this policy was designed to discourage Plaintiff and other similarly situated workers from seeking compensation for time spent working outside the hours of their scheduled shifts.  It emanates from, and is consistent with, Envision's corporate culture of prioritizing cost-cutting and profit maximization over its legal obligations, including compliance with wage and hour laws and contractual obligations to its employees.

54.     Envision maintains, disseminates, and enforces these corporate policies on a top-down, uniform, nationwide, and company-wide basis by, *inter alia*:

> a.      Requiring its managers to strictly adhere to a budget of permissible hours for each facility, project, contract, and/or employee, whereby compensation for additional work performed outside of the pre-arranged schedule may result in the budget being exceeded and consequently expose the manager to discipline or other corporate pressure;
>
> b.       Understaffing its clinical facilities to reduce labor costs, thereby ensuring that Plaintiff and other similarly situated persons would be required to work time outside their scheduled shifts to complete their work, particularly their charting obligations;
>
> c.      Holding regional meetings on approximately a monthly basis whereat the foregoing policies on timekeeping, compensation, and overtime were

discussed and explained among Envision's managers and enforced on a hierarchical basis;

     d.    Holding a yearly national meeting whereat the foregoing policies on timekeeping, compensation, and overtime were discussed and explained among Envision's managers and enforced on a hierarchical basis; and

     e.    Regular emails and phone communications between managers, their supervisors, and their reports, whereby the foregoing policies on timekeeping, compensation, and overtime were discussed, explained, and enforced.

### d. Envision's Corporate Policies Violate the Contractual and Statutory Rights of Plaintiff and Other Similarly Situated Workers

55.    Envision's policies of refusing to record or pay for time worked in excess of pre-scheduled hours (unless for the treatment of "new" patients, and even then only after clearing the requisite red tape) was not set out in the employment contracts it entered into with Plaintiff and other similarly situated persons. Further, it is in fact plainly inconsistent with said contracts, which promise to pay workers for "all hours worked" or "all clinical hours worked."

56.    These policies are further inconsistent with the FLSA, which requires employers to pay for overtime work – that is, time in excess of 40 hours in a given week – at a "rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207.

57.    While employed by Envision, Plaintiff and other similarly situated persons have routinely worked for periods of time after their shifts were complete, which has often also resulted in them working in excess of 40 hours in a given week. However, this time is unpaid.

58.    Envision knows, or at very least has reason to know, that Plaintiff and other similarly situated persons have performed work – including charting, treating patients, assisting

colleagues with tasks, and general administrative work – outside of their pre-scheduled shifts and without compensation, notwithstanding Envision's uniform corporate policies of refusing to pay for such work.

59.     The U.S. Department of Labor has issued formal guidance on this precise issue. The Department has stated that "[e]mployees must be paid for work 'suffered or permitted' by the employer even if the employer does not specifically authorize the work.  If the employer knows or has reason to believe that the employee is continuing to work, the time is considered hours worked."  U.S. Department of Labor, Wage and Hour Division, Fact Sheet #53, The Health Care Industry                 and                 Hours                 Worked, https://www.dol.gov/sites/dolgov/files/WHD/legacy/files/whdfs53.pdf, (last visited February 10, 2022).

60.     To illustrate this principle, the Department offered the following example:

Example #13: A residential care facility pays its nurses an hourly rate. Sometimes the residential care facility is short staffed and the nurses stay beyond their scheduled shift to work on patients' charts. This results in the nurses working overtime. The director of nursing **knows additional time is being worked, but believes no overtime is due because the nurses did not obtain prior authorization to work the additional hours as required by company policy. Is this correct? No. The nurses must be paid time-and-one-half for all FLSA overtime hours worked**.

*Id.* (emphasis added).

61.     Likewise, Envision has suffered or permitted its employees to work overtime without requisite compensation.

62.     Additionally, Envision's uniform corporate policies have resulted in it violating the FLSA's requirements that it keep accurate records of time worked by its employees.

## ALTER EGO AND JOINT EMPLOYMENT ALLEGATIONS

63.     Envision conducts much of its medical practice management business through its approximately 700 subsidiary legal entities, called governmental reporting entities (GREs), through which it supplies physicians, nurses, and other medical personnel to provide medical services. It does this because regulations prohibit for-profit corporations from directly owning physician practice groups.

64.     In an effort to evade these regulations, Envision's GRE subsidiaries are nominally owned by licensed physicians. But they are controlled, managed, and operated entirely by Envision. The payroll, human resources, legal, recruiting, and operation of each GRE subsidiary is controlled by Envision, though it forwards operational documents for the nominal physician owner of the subsidiary to sign. Each of these nominal owners are employed by or otherwise associated with Envision, from which they receive a salary.

65.     All profits earned by these GRE subsidiaries flow directly to Envision, and none are kept by the nominal owners.

66.     From its position of control, Envision operates and manages its GRE subsidiaries and instructs them on how and when to execute all manner of employment policies. These subsidiaries, including Plaintiff's joint employer Missouri IPS Medical Services, LLC, must and do follow Envision's operational instructions. Due to the pervasive control Envision has exercised and continues to exercise over the employees at each of its subsidiaries (both directly and indirectly), Envision is the joint employer of Plaintiff and all others similarly situated, as well as the alter ego of each of its GREs.

67.     There is no material difference between the manner in which Envision treats each of its GRE subsidiary practice groups or the employees who work at the same. Each of the

subsidiaries is akin to a regional office of Envision's nationwide operation, for which the company controls and directs its policies and procedures across the country.

68.     At all relevant times, Envision is and was the employer and joint employer of Plaintiff and all others similarly situated, in that:

    a.     Envision has the power to and exercises control over the hiring and firing of Plaintiff and all other similarly situated persons;

    b.     Envision has the right to and does supervise and control the work schedules, conditions of employment, and the manner in which Plaintiff and all other similarly situated persons performed their jobs;

    c.     Envision implements policies governing when work performed outside of its workers' pre-scheduled shifts would be compensated;

    d.     Envision determines the rate and method of payment for Plaintiff and all other similarly situated persons; and

    e.     Envision maintains employment records for Plaintiff and all other similarly situated persons.

69.     At all relevant times, Envision is and was the alter ego of each of its GREs and subsidiaries, in that:

    a.     Each of its GREs is actually controlled in every relevant respect entirely by Envision;

    b.     Each of its GREs' profits are not kept by its nominal owners, and instead flow entirely to Envision;

    c.     Upon information and belief, every one of Envision's more than 700 GREs throughout the country is operated out of Envision's offices;

16

d.   Envision's GREs have failed to maintain formal legal separation from Envision itself. Upon information and belief, Envision's GREs have not observed corporate formalities, have not held separate meetings or kept separate minutes of key company decisions, and have not maintained separate books, financial accounts, financial statements, tax returns, or other tax documents;

e.   Envision's GREs share the same employees, officers, and directors as Envision itself, and are engaged in the same business enterprise. None of the company's GREs is owned or managed by a person not affiliated with Envision itself, and are instead each subject to common ownership through Envision;

f.   Envision and its GREs share the same offices, phone lines, internal communications, and equipment relevant to carrying out their enterprise;

g.   Envision and its GREs share the same assets and intermingle their funds. Envision pays or otherwise finances the salaries, expenses, and payroll obligations of its GREs;

h.   Envision performs all payroll, human resources, legal, recruiting, and operations work on behalf of its GREs;

i.   Envision's use of purportedly separate and nominally "physician owned" GREs is part of a fraudulent scheme to evade state law prohibitions on corporate ownership of medical practices, when in fact the GREs are not actually owned by licensed physicians and are instead mere divisions of Envision's corporate enterprise. This fraud has resulted not only in reduced

patient care and medical outcomes, but also in unpaid wages owed to Plaintiff and other similarly situated persons.

70.     At all times relevant to this action, Envision acted by and through its agents, servants, and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Envision.

## COLLECTIVE AND CLASS ACTION ALLEGATIONS

71.     Plaintiff brings Count I, the FLSA claim arising out of Envision's overtime violations, as an "opt in" collective action pursuant to 29 U.S.C. § 216(b) on behalf of herself and the following collective action class:

> All persons currently and formerly employed by Envision as medical employees, other than physicians, in hourly positions who worked more than forty (40) hours in a workweek at any time from three (3) years prior to the filing of the initial Class and Collective Action Complaint to the present.[1]

Plaintiff's FLSA claim may be pursued by those who opt-in to this case, pursuant to 29 U.S.C. § 216(b).

72.     Plaintiff, individually and on behalf of all others similarly situated, seeks relief on a collective basis challenging Envision's above-described FLSA violations.  The number and identity of other plaintiffs yet to opt-in and consent to be party plaintiffs may be determined from Envision's records, and potential opt-in plaintiffs may easily and quickly be notified of the pendency of this action.

---

[1] By way of Envision's internal employee management and classification systems, this collective includes (1) all APPs paid on an hourly basis; and (2) all non-clinical lower-level employees paid on an hourly basis. It includes all acknowledged employees, as well as all persons erroneously misclassified as independent contractors. It excludes (1) all *bona fide* independent contractors; (2) all operational or corporate employees who do not work in a medical setting; (3) all physicians actively engaged in the practice of medicine; and (4) all exempt employees paid on a salary basis.

73. Plaintiff brings Count II (Breach of Contract), Count III (Unjust Enrichment and Quantum Meruit), Count IV (Violation of State Wage Payment Statutes), and Count V (Violation of State Overtime Statutes) pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(1), 23(b)(2), 23(b)(3) and/or 23(c)(4). Plaintiff brings this action on behalf of herself and all others similarly situated, and seeks to represent the following classes:

a. **Breach of Contract Class:** All medical employees subject to a written employment contract with Envision that provided an hourly rate for each hour worked during the applicable limitations period.[2]

b. **Unjust Enrichment and Quantum Meruit Class:** All medical employees and contractors currently or formerly employed or otherwise hired by Envision in hourly positions without a written contract, who were paid an hourly rate during the applicable limitations period.[3]

c. **State Wage Payment Statutes Class:** All medical employees currently or formerly employed by Envision in hourly positions within Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Massachusetts, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Utah, Vermont, Virginia, Washington, West Virginia, Wisconsin, and Wyoming

---

[2] By way of Envision's internal employee management and classification systems, this class includes all physicians, APPs, and non-clinicians/lower-level employees subject to a written employment agreement providing payment at an hourly rate, regardless of their classification as employees or independent contractors. It excludes (1) all operational or corporate employees who do not work in a medical setting; and (2) all persons working for Envision without a written employment agreement. Upon information and belief, many non-clinical/lower-level employees do not have a written employment agreement.

[3] By way of Envision's internal employee management and classification systems, this class includes all physicians, APPs, and non-clinicians/lower-level employees paid at an hourly rate but *not* party to a written employment agreement, regardless of their classification as employees or independent contractors. It excludes (1) all operational or corporate employees who do not work in a medical setting; and (2) all persons working for Envision with a written employment agreement. Upon information and belief, many non-clinical/lower-level employees do not have a written employment agreement.

who worked time outside of their scheduled shifts for which they were not compensated during the applicable limitations period.[4]

**d.** **State Overtime Statutes Class:** All medical employees (excluding physicians) currently or formerly employed by Envision in hourly positions within Alaska, California, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Illinois, Kentucky, Michigan, Minnesota, Missouri, Montana, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, Vermont, Virginia, Washington, West Virginia, and Wisconsin who worked overtime for which they were not compensated during the applicable limitations period.[5]

Excluded from the Classes are Envision, any entity in which Envision has a controlling interest, any of the officers or directors of Envision, the legal representatives, heirs, successors, and assigns of Envision, anyone employed with Plaintiff's counsel's firms, and any Judge to whom this case is assigned, and his or her immediate family.

74. Plaintiff's claims and allegations that rely upon contractual duties and obligations are premised on the written provisions of her employment contract, which are materially the same as those of the members of the proposed class, and whose material terms are not subject to individual negotiation.

75. Plaintiff's Classes satisfy the numerosity, commonality, typicality, adequacy, and superiority requirements of a class action under Rule 23, as set forth more fully herein.

---

[4] By way of Envision's internal employee management and classification systems, this class includes all physicians, APPs, and non-clinicians/lower-level employees paid at an hourly rate, regardless of whether they were paid pursuant to a written contract. It excludes (1) all *bona fide* independent contractors; (2) all operational or corporate employees who do not work in a medical setting; and (3) all exempt employees paid on a salary basis.

[5] By way of Envision's internal employee management and classification systems, this class includes (1) all APPs paid on an hourly basis; and (2) all non-clinical lower-level employees paid on an hourly basis. It includes all acknowledged employees, as well as all persons erroneously misclassified as independent contractors. It excludes (1) all *bona fide* independent contractors; (2) all operational or corporate employees who do not work in a medical setting; (3) all physicians actively engaged in the practice of medicine; and (4) all exempt employees paid on a salary basis.

76. **Numerosity**. Envision employs tens of thousands of people across the United States. Consequently, the Classes number in at least the hundreds and most likely thousands, and thus the numerosity standard is satisfied. Moreover, because the members of the Classes are geographically dispersed across the country, joinder of all members in a single action is impracticable. Class members may be informed of the pendency of this class action through direct mail or other means based on Envision's records of its employees.

77. **Commonality**. There are questions of fact and law common to the Class that predominate over any questions affecting only individual members. The questions of law and fact common to the Class arising from Envision's actions include, without limitation, the following:

    a.  Whether Envision maintained a policy of refusing to pay Plaintiff and class members for time worked on behalf of Envision in excess of the time listed on the pre-arranged schedules;

    b.  Whether Envision maintained a policy of refusing to pay Plaintiff and class members overtime rates for hours worked in excess of 40 in a given workweek;

    c.  Whether Envision knew or should have known that Plaintiff and class members were performing work outside of their pre-arranged schedules;

    d.  Whether Envision knew or should have known that Plaintiff and class members were performing overtime work without paying them at a rate of one-and-one-half times their regular rate of pay;

    e.  Whether Envision's company-wide policy denying payment for charting, assisting co-workers, and conducting administrative work outside of Plaintiff and class members' pre-arranged schedules is lawful;

f.   Whether Envision's company-wide policy for approval for payment of work performed outside of Plaintiff and class members' pre-arranged schedules is lawful;

g.   Whether Envision owed Plaintiff and class members a contractual duty to pay them for all hours worked;

h.   Whether Envision breached its contracts with Plaintiff and class members;

i.   Whether time spent by Plaintiff and class members charting and working on their patients' medical records when outside the scheduled time is deemed to be "hours worked";

j.   Whether time spent by Plaintiff and class members treating patients and assisting colleagues with treatment-related tasks when outside the scheduled time is deemed to be "hours worked";

k.   Whether Envision was unjustly enriched by virtue of its policies and practices with respect to Plaintiff's and class members' pay;

l.   Whether Plaintiff and the class are entitled to damages;

m.   Whether Envision acted in good faith with respect to its FLSA obligations.

78.   **Predominance.** The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness, and equity to other available methods for the fair and efficient adjudication of the claims asserted herein. Specifically, thousands of Envision's employees have suffered losses from its failure to pay them for all hours worked, and failure to pay them overtime rates for overtime hours worked.  These claims arise from a common factual

22

predicate, namely Envision's failure to pay their employees for time worked outside of their pre-scheduled shifts.

79. **Typicality.** Plaintiff's claims are typical of those of the Class as the absent members of the Class were employed in the same or similar positions as the Plaintiff and were subject to the same or similar conduct as Plaintiff.

80. **Superiority**. A class action is the appropriate method for the fair and efficient adjudication of this controversy. Envision has acted or refused to act on grounds generally applicable to the Class as a whole by maintaining a uniform, nationwide, and company-wide policy of refusing to pay for all clinical time worked by its employees, and refusing to pay overtime for hours worked in excess of 40 in a given workweek. The presentation of separate actions by individual Class members would create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Envision, and/or substantially impair or impede the ability of Class members to protect their interests.

81. **Adequacy**. Plaintiff is an adequate representative of the Class because she is a member of the Class and her interests do not conflict with the interests of those she seeks to represent. The interests of the Class members will be fairly and adequately protected by Plaintiff and her counsel, who have extensive experience prosecuting complex class litigation.

82. Maintenance of this action as a class action is a fair and efficient method for adjudication of this controversy. It would be impracticable and undesirable for each member of the classes who suffered harm to bring a separate action. In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all class members.

23

## ALLEGATIONS APPLICABLE TO THE FLSA CLAIM

83.     At all times relevant herein, Plaintiff and all others similarly situated have been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. §§ 201, *et seq*.

84.     The FLSA regulates, among other things, the payment of overtime pay by employers whose employees are engaged in interstate commerce, or engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce.  29 U.S.C. § 207(a)(1).

85.     Envision is subject to the overtime pay requirements of the FLSA because it is an enterprise engaged in interstate commerce and its employees are engaged in commerce.

86.     During all times relevant to this action, Envision is and was the "employer" of Plaintiff and all similarly situated employees within the meaning of the FLSA.  29 U.S.C. § 203(d).

87.     During all times relevant to this action, Plaintiff and all similarly situated employees were Envision's "employees" within the meaning of the FLSA.  29 U.S.C. § 203(e).

88.     Plaintiff and all similarly situated employees are covered, non-exempt employees within the meaning of the FLSA.  Accordingly, Plaintiff and all similarly situated employees must be paid overtime in accordance with 29 U.S.C. § 207(a).

89.     Pursuant to the FLSA, employees are also entitled to be compensated at a rate of not less than one and one-half times the regular rate at which such employees are employed for all work performed in excess of 40 hours in a workweek.  29 U.S.C. § 207(a).

90.      Although the FLSA contains some exceptions (or exemptions) from the overtime requirements, none of those exceptions (or exemptions) applies here.

91.     Plaintiff and all similarly situated employees are victims of uniform and nationwide policies.  Upon information and belief, Envision is applying the same unlawful compensation policies to all similarly situated employees nationwide.

92.     Plaintiff and all similarly situated employees are entitled to damages equal to the overtime premium pay within the three (3) years preceding the filing of the Class and Collective Action Complaint, plus periods of equitable tolling, because Envision acted willfully and knew, or showed reckless disregard of whether its conduct was prohibited by the FLSA.

93.     As Envision has acted neither in good faith nor with reasonable grounds to believe that its actions and omissions were not a violation of the FLSA, Plaintiff and other similarly situated employees are also entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid wages as described by Section 16(b) of the FLSA, codified at 29 U.S.C. § 216(b).  Alternatively, should the Court find Envision acted in good faith or with reasonable grounds in failing to pay minimum wage and overtime compensation, Plaintiff and all similarly situated employees are entitled to an award of prejudgment interest at the applicable legal rate.

94.     As a result of these violations of the FLSA's overtime pay provisions, compensation has been unlawfully withheld by Envision from Plaintiff and all similarly situated employees.  Accordingly, pursuant to 29 U.S.C. § 216(b), Envision is liable for the unpaid minimum wages and overtime premium pay along with an additional amount as liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees, and costs of this action.

## <u>COUNT I – VIOLATION OF FLSA</u>

**(Brought Against Envision by Plaintiff Individually and
on Behalf of All Others Similarly Situated)**

95.     Plaintiff re-alleges the allegations set forth above.

96.     The FLSA claim may be pursued by those who opt-in to this case, pursuant to 29 U.S.C. § 216(b).

97.     At all times material herein, Plaintiff and other similarly situated employees have been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. §§ 201, *et seq*.

98.     Envision violated the FLSA by failing to pay all hours worked, including overtime. In the course of perpetrating these unlawful practices, Envision has also failed to keep accurate records of all hours worked by its employees.

99.     Envision is not eligible for any FLSA exemption excusing their failure to pay overtime.

100.    Plaintiff and other similarly situated employees are victims of a company-wide compensation policy.

101.    Plaintiff and other similarly situated employees are entitled to damages equal to the mandated overtime premium pay within the three years preceding their joining this action, plus periods of equitable tolling, because Envision acted willfully and knew, or showed reckless disregard of whether, its conduct was prohibited by the FLSA.

102.    Envision has acted neither in good faith nor with reasonable grounds to believe that its actions and omissions were not a violation of the FLSA, and as a result thereof, Plaintiff and other similarly situated employees are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid overtime pay pursuant to 29 U.S.C. § 216(b).  Alternatively, should the Court find Envision did act with good faith and reasonable grounds in failing to pay overtime pay, Plaintiff and other similarly situated employees are entitled to an award of prejudgment interest at the applicable legal rate.

103. As a result of the aforesaid violations of the FLSA's overtime pay provisions, overtime compensation has been unlawfully withheld by Envision from Plaintiff and all similarly situated employees.

WHEREFORE, on Count I of this Class and Collective Action Complaint, Plaintiff and all similarly situated employees demand judgment against Envision and pray this Court:

a. Issue notice to all similarly situated employees of Envision informing them of their right to file consents to join the FLSA portion of this action;

b. Award Plaintiff and all similarly situated employees damages for unpaid overtime wages under 29 U.S.C. § 216(b);

c. Award Plaintiff and all similarly situated employees liquidated damages under 29 U.S.C. § 216(b);

d. Award Plaintiff and all similarly situated employees pre-judgment and post-judgment interest as provided by law;

e. Award Plaintiff and all similarly situated employees attorneys' fees and costs under 29 U.S.C. § 216(b);

f. Award Plaintiff and all similarly situated employees such other relief as the Court deems fair and equitable.

## COUNT II – BREACH OF CONTRACT

**(Brought Against Envision by Plaintiff Individually and
on Behalf of All Others Similarly Situated)**

104. Plaintiff re-alleges the allegations set forth above.

105. Envision entered into a contract with Plaintiff and similarly situated persons through which it agreed that such persons would get paid an agreed-upon hourly rate for every hour worked during their employment.

27

106. Envision breached this contract by failing to pay Plaintiff and other similarly situated persons their agreed-upon hourly rate for every hour worked during their employment.

107. Specifically, Envision refused and/or failed to pay Plaintiff and other similarly situated persons for time spent working before and after their pre-scheduled working shifts, as further described above and incorporated herein.

108. Because of Envision's breach, Plaintiff and the Class have been damaged.

WHEREFORE, on Count II of this Class and Collective Action Complaint, Plaintiff and the Class demand judgment against Envision and pray this Court:

        a. Certify the state law claim set forth in Count II above as a class action pursuant to Fed. R. Civ. P. 23;

        b. Order Envision to pay Plaintiff and the Class for the improperly withheld wages in violation of their contract;

        c. Award Plaintiff and the Class pre-judgment and post-judgment interest as provided by law; and

        d. Award Plaintiff and the Class such other relief as the Court deems fair and equitable.

## COUNT III – UNJUST ENRICHMENT AND QUANTUM MERUIT

**(Brought Against Envision by Plaintiff Individually and
on Behalf of All Others Similarly Situated)**

109. Plaintiff re-alleges the allegations set forth above.

110. Plaintiff brings this claim solely for the recovery of unpaid "gap time", that is, wages for fewer than forty hours per week at a rate greater than the minimum wage, which is not recoverable under the FLSA. Specifically, Plaintiff frequently worked time outside of her pre-

scheduled shifts during weeks in which she worked fewer than forty hours for which she was not compensated.

111.     Pursuant to Federal Rule of Civil Procedure 8(d), Plaintiff asserts this claim in the alternative to any other claims she holds by virtue of her rights under her employment contract.

112.     Envision benefited from the unpaid gap time work performed by Plaintiff and other similarly situated employees outside of their scheduled shifts.

113.     Envision was aware or should have been aware that it was receiving the benefit of this unpaid gap time work at the time the work was being performed, and it accepted and retained that benefit without paying fair compensation for the same.

114.      Envision's acceptance and retention of the benefit of Plaintiff and other similarly situated employees' unpaid gap time labor was inequitable and resulted in Envision being unjustly enriched.

WHEREFORE, on Count III of this Class and Collective Action Complaint, Plaintiff and the class members demand judgment against Envision and pray this Court:

a.     Certify the state law claim set forth in Count III above as a class action pursuant to Fed. R. Civ. P. 23;

b.     Order Envision to disgorge the value of its ill-gained benefits to Plaintiff and the Class;

c.     Award Plaintiff and the Class pre-judgment and post-judgment interest as provided by law; and

d.     Award Plaintiff and the Class such other relief as the Court deems fair and equitable.

## COUNT IV – VIOLATION OF STATE WAGE PAYMENT STATUTES
### (Brought Against Envision by Plaintiff Individually and
### on Behalf of All Others Similarly Situated)

115.    Plaintiff re-alleges the allegations set forth above.

116.    At all times relevant to this action, Plaintiff and other similarly situated employees were employed by Envision.

117.    Envision's course of conduct described above violated the various wage payment statutes of the several states listed herein by failing to pay all wages due or owed to Plaintiff and other similarly situated employees for which the company had agreed to pay.

118.    Envision's failure to pay all wages due and owing to its employees is in violation of the following state wage payment laws, each of whose relevant terms are materially equivalent such that a common violation may be established on a class-wide basis:

> a.  Alaska – Alaska Stat. § 23.05.140 *et seq.*;
>
> b.  Arizona – Ariz. Rev. Stat. Ann. § 23–351 *et seq.*;
>
> c.  Arkansas – Ark. Code Ann. § 11–4–401 *et seq.*;
>
> d.  California – Cal. Lab. Code § 204 *et seq.*;
>
> e.  Colorado – Colo. Rev. Stat. § 8–4–101 *et seq.*;
>
> f.  Connecticut – Conn. Gen. Stat. Ann. § 31–71b *et seq.*;
>
> g.  Delaware – Del. Code Ann. tit. 19, § 1102 *et seq.*;
>
> h.  Florida – Fla. Stat. Ann. § 448.08 *et seq.*;
>
> i.  Georgia – Ga. Code Ann. § 34–7–2 *et seq.*; Ga. Code Ann. § 51-1-6 *et seq.*;
>
> j.  Hawaii – Haw. Rev. Stat. § 388–2 *et seq.*;
>
> k.  Idaho – Idaho Code Ann. § 45–608 *et seq.*;
>
> l.  Illinois – 820 ILCS 115/1 *et seq.*;
>
> m.  Indiana – Ind. Code Ann. § 22–2–5–1 *et seq.*;

n.  Iowa – Iowa Code Ann. § 91A.3 *et seq.*;

o.  Kansas – Kan. Stat. Ann. § 44–314 *et seq.*;

p.  Kentucky – Ky. Rev. Stat. Ann. § 337.020 *et seq.*;

q.  Louisiana – La. Rev. Stat. Ann. § 23:631 *et seq.*;

r.  Massachusetts – Mass. Gen. Laws Ann. ch. 149, § 148 *et seq.*;

s.  Minnesota – Minn. Stat. Ann. § 181.101 *et seq.*;

t.  Mississippi – Miss. Code. Ann. § 71–1–35 *et seq.*;

u.  Missouri – Mo. Ann. Stat. § 290.080 *et seq.*;

v.  Montana – Mont. Code Ann. § 39–3–204 *et seq.*;

w.  Nebraska – Neb. Rev. Stat. § 48–1230 *et seq.*;

x.  Nevada – Nev. Rev. Stat. Ann. § 608.060 *et seq.*;

y.  New Hampshire – N.H. Rev. Stat. Ann. § 275:43 *et seq.*;

z.  New Jersey – N.J. Stat. Ann. § 34:11–4.2 *et seq.*;

aa. New Mexico – N.M. Stat. Ann. § 50–4–26 *et seq.*;

bb. New York – N.Y. Lab. Law § 191 *et seq.*;

cc. North Carolina – N.C. Gen. Stat. Ann. § 95–25.6 *et seq.*;

dd. North Dakota – N.D. Cent. Code Ann. § 34–14–02 *et s–q.*;

ee. Ohio – Ohio Rev. Code Ann. § 4113.15 *et seq.*;

ff. Oklahoma – Okla. Stat. Ann. tit. 40, § 165.2 *et seq.*;

gg. Oregon – Or. Rev. Stat. Ann. § 652.120 *et seq.*;

hh. Pennsylvania – 43 Pa. Stat. Ann. § 260.3 *et seq.*;

ii. Rhode Island – R.I. Gen. Laws Ann. § 28–14–2.2 *et seq.*;

jj. South Carolina – S.C. Code § 41–10–10 *et seq.*;

kk. South Dakota – S.D. Codified Laws § 60–11–1 *et seq.*;

ll. Utah – Utah Code Ann. § 34–28–3 *et seq.*;

mm. Vermont – Vt. Stat. Ann. tit. 21, § 342 *et seq.*;

nn. Virginia – Va. Code Ann. § 40.1–29 *et seq.*;

oo. Washington – RCW 49.48 *et seq.*;

pp. West Virginia – W. Va. Code Ann. § 21–5–3 *et seq.*;

qq. Wisconsin – Wis. Stat. Ann. § 109.03 *et seq.*; and

rr. Wyoming – Wyo. Stat. Ann. § 27–4-101 *et seq.*

119. Envision maintains a company–wide policy and practice of failing and refusing to pay wages due and owing to Plaintiff and other similarly situated employees, and said policy is willful in nature and not the result of a good faith mistake.

WHEREFORE, on Count IV of this Class and Collective Action Complaint, Plaintiff and the Class demand judgment against Defendants and pray this Court:

a. Certify the state law claim set forth in Count IV above as a class action pursuant to Fed. R. Civ. P. 23;

b. Order Envision to pay Plaintiff and the Class for the improperly withheld wages;

c. Award Plaintiff and the Class all penalties, interest, liquidated damages, statutory damages, attorneys fees, costs, and all other relief permitted by the various wage payment statutes of the several states listed herein; and

d. Award Plaintiff and the Class such other relief as the Court deems fair and equitable.

## COUNT V – VIOLATION OF STATE OVERTIME STATUTES
### (Brought Against Envision by Plaintiff Individually and
on Behalf of All Others Similarly Situated)

120. Plaintiff re-alleges the allegations set forth above.

121. At all times relevant to this action, Plaintiff and other similarly situated employees were employed by Envision.

122. Envision's course of conduct described above violated the various overtime statutes of the several states listed herein by failing to pay the elevated hourly rate or penalty for all hours worked over the relevant threshold to Plaintiff and other similarly situated employees.

123. Envision's failure to pay overtime to its employees is in violation of the following state overtime laws, each of whose relevant terms are materially equivalent such that a common violation may be established on a class-wide basis:

    a. Alaska – Alaska Stat. § 23.10.060 *et seq.*;

    b. California – Cal. Lab. Code § 510 *et seq.*;

    c. Colorado – Colo. Rev. Stat. §§ 8–6–101 *et seq.*; 7 Colo. Code Regs § 1103–1(4) *et seq.*;

    d. Connecticut – Conn. Gen. Stat. Ann. § 31–76c *et seq.*;

    e. Delaware – Del. Code Ann. tit. 19, § 1102 *et seq.*;

    f. Florida – Fla. Stat. Ann. § 448.08 *et seq.*; Fla. Stat. Ann. § 488.01 *et seq.*;

    g. Georgia – Ga. Code Ann. § 9-3-22 *et seq.*;

    h. Hawaii – Haw. Rev. Stat. Ann. § 387–3 *et seq.*;

    i. Illinois – 820 Ill. Comp. Stat. Ann. 105/4a *et seq.*;

    j. Kentucky – Ky. Rev. Stat. Ann. § 337.285 *et seq.*;

    k. Michigan – Mich. Comp. Laws Ann. § 408.414a *et seq.*;

l.  Minnesota – Minn. Stat. Ann. § 177.23 *et seq. et seq.*;

m.  Missouri – Mo. Ann. Stat. § 290.505 *et seq.*;

n.  Montana – Mont. Rev. Code Ann. § 39–3–405 *et seq.*;

o.  Nevada – Nev. Rev. Stat. § 608.018 *et seq.*;

p.  New Hampshire – N.H. Rev. Stat. Ann. § 279:21 *et seq.*:

q.  New Jersey – N.J. Stat. Ann. § 34:11–56a4 *et seq.*;

r.  New Mexico – N.M. Stat. Ann. § 50–4–22 *et seq.*;

s.  New York – N.Y. Comp. Codes R. & Regs. tit. 12, § 142–3.2 *et seq.*;

t.  North Carolina – N.C. Gen. Stat. Ann. § 95–25.4 *et seq.*;

u.  North Dakota – N.D. Admin. Code 46–02–07–02(4) *et seq.*;

v.  Ohio – Ohio Rev. Code Ann. § 4111.03 *et seq.*;

w.  Oklahoma – Okla. Stat. Ann. tit. 74, § 840–2.15 *et seq.*;

x.  Oregon – Or. Rev. Stat. Ann. §§ 653.055, 653.261 *et seq.*;

y.  Pennsylvania – 43 Pa. Stat. Ann. § 333.104 *et seq.*;

z.  Rhode Island – 28 R.I. Gen. Laws Ann. § 28–12–4.1 *et seq.*;

aa. Vermont – Vt. Stat. Ann. tit. 21, § 384 *et seq.*;

bb. Virginia – Va. Code Ann. § 40.1–29.2 *et seq.*;

cc. Washington – Wash. Rev. Code Ann. § 49.46.130 *et seq.*;

dd. West Virginia – W. Va. Code Ann. § 21–5C–3 *et seq.*; and

ee. Wisconsin – Wis. Admin. Code DWD § 274.015 *et seq.*

124.  Envision maintains a company-wide policy and practice of failing and refusing to pay wages due and owing to Plaintiff and other similarly situated employees, and said policy is willful in nature and not the result of a good faith mistake.

WHEREFORE, on Count V of this Class and Collective Action Complaint, Plaintiff and the Class demand judgment against Defendants and pray this Court:

    a.   Certify the state law claim set forth in Count V above as a class action pursuant to Fed. R. Civ. P. 23;

    b.   Order Envision to pay Plaintiff and the Class for the improperly withheld wages;

    c.   Award Plaintiff and the Class all penalties, interest, liquidated damages, statutory damages, attorneys fees, costs, and all other relief permitted various wage payment statutes of the several states listed herein; and

    d.   Award Plaintiff and the Class such other relief as the Court deems fair and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests a trial by jury of all issues so triable.

## DESIGNATION OF PLACE OF TRIAL

Plaintiff hereby designates the federal court in Nashville, Tennessee as the place of trial.

Dated: February 24, 2022        Respectfully submitted,

                  /s/ *Charles P. Yezbak, III*
                  /s/ *Melody Fowler-Green*
                  **YEZBAK LAW OFFICES PLLC**
                  Charles P. Yezbak, III, TN Bar # 18965
                  Melody Fowler-Green, TN Bar # 23266
                  2021 Richard Jones Road, Suite 310-A
                  Nashville, TN 37215
                  Telephone:    (615) 250-2000
                  Facsimile:    (615) 250-2020
                  yezbak@yezbaklaw.com

35

/s/ *George A. Hanson*
/s/ *Alexander T. Ricke*
/s/ *Caleb J. Wagner*
/s/ *Jordan A. Kane*
**STUEVE SIEGEL HANSON LLP**
George A. Hanson, MO Bar # 43450 (*PHV forthcoming*)
Alexander T. Ricke, MO Bar # 65132 (*PHV forthcoming*)
Caleb J. Wagner, MO Bar # 68458 (*PHV forthcoming*)
Jordan A. Kane MO Bar # 71028 (*PHV forthcoming*)
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Telephone:      (816) 714-7100
Facsimile:      (816) 714-7101
hanson@stuevesiegel.com
ricke@stuevesiegel.com
wagner@stuevesiegel.com
kane@stuevesiegel.com

/s/ *Frankie J. Forbes*
/s/ *Quentin M. Templeton*
**FORBES LAW GROUP, LLC**
Frankie J. Forbes, MO Bar #53512 (*PHV forthcoming*)
Quentin M. Templeton, MO Bar #67330 (*PHV forthcoming*)
6900 College Boulevard, Suite 840
Overland Park, KS 66211
Telephone:      (913) 341-8600
Facsimile:      (913) 341-8606
fforbes@forbeslawgroup.com
qtempleton@forbeslawgroup.com

*Attorneys for Plaintiff*
*and the Proposed Classes*